UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL J. WALTON,

        Petitioner,                      Civil Case No. 15-10609
                                          Honorable Linda V. Parker

v.

THOMAS MACKIE,

        Respondent,
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Michael J. Walton ("Petitioner") has filed an application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is challenging his Michigan state court convictions for assault with intent to commit murder, unlawful imprisonment, domestic violence, two counts of fourth-degree child abuse, and felony-firearm. For the reasons that follow, the Court is denying Petitioner's request for habeas relief.

## I. Background

Petitioner was convicted of the above offenses following a bench trial in the Wayne County Circuit Court. The charges arose from the shooting of Petitioner's wife, Twonder Walton, above her right eye. Petitioner's convictions and sentence were affirmed on appeal. *People v. Walton*, No. 306950, 2013 WL 2420980

(Mich. Ct. App. June 5, 2013), *leave denied*, 839 N.W.2d 483 (Mich. 2013). In its decision, the Michigan Court of Appeals set forth the following summary of the facts leading to Petitioner's convictions:

> Defendant and Twonder were arguing when defendant picked up a revolver. Defendant told Twonder, "We [sic] going to play a little game which is called Russian roulette." Defendant placed bullets inside his gun. He pointed his revolver at Twonder's head and pulled the trigger multiple times, but no bullet fired. Defendant stopped and looked at the position of the bullets in his gun. He put the gun to Twonder's head and then to her mouth. Defendant told her not to make matters worse as she tried to push the gun away from her head. Defendant "look[ed] at the gun" and told her, "That could have been you. The bullet was almost there." Defendant pulled the trigger a "couple" times and a bullet discharged and hit Twonder above her right eye. Twonder yelled, "Oh my God, you shot me." The nine year-old daughter of defendant and Twonder heard Twonder yelling "Oh my God."

*Walton*, 2013 WL 2420980, at *2. These facts are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

Petitioner filed his application for federal habeas corpus relief on February 17, 2015. (ECF No. 1.) He subsequently moved to stay the proceedings to exhaust claims in the state courts, which the Court granted. (ECF Nos. 9, 10.)

Petitioner thereafter filed a post-conviction motion for relief from judgment in the state trial court. (ECF No. 24-9.) The state trial court denied the motion on February 11, 2016. (ECF No. 24-10.) The Michigan appellate courts denied

Petitioner leave to appeal. *People v. Walton*, No. 334199 (Mich. Ct. App. Oct. 31, 2016), *leave denied*, 896 N.W.2d 448 (2017).

Petitioner returned to this Court and filed an amended habeas petition on August 9, 2017. (ECF No. 19.) Respondent filed an answer to the petition and amended petition on March 13, 2018. (ECF No. 23.) Petitioner asserts the following claims in support of his request for relief under § 2254:

> I. The Defendant was denied his Sixth Amendment right to effective assistance of counsel where counsel failed to perform an effective cross-examination to impeach inconsistencies, and contradictions to show the witnesses' story was perjured and fabricated, and that the witness coached false witnesses; and failed to call Glover, the officer in charge of this case, to testify.
>
> II. The Defendant was denied his Sixth Amendment right to effective assistance of trial counsel where counsel failed to investigate two witnesses that would have provided testimony that would prove the complainant was lying, and shedded [sic] light to the complainant's motive to lie.
>
> III. The Defendant was denied his Sixth Amendment right to effective assistance of counsel where counsel failed to investigate the physical evidence of hotel receipt records, and surveillance video from three different places, that would have absolutely proved red-handedly that the complainant lied, in a case that had only testimonial evidence—based on credibility.
>
> IV. The Defendant was deprived of his Fourteenth Amendment federal constitutional right to due process and a fair trial where the prosecutor knew for a fact that certain testimony of his main witness and his 9 and 7 year old witnesses was "factually" false. And had to, or should have known that all of their testimony—as shown in Issue I's impeachment demonstration—was fabricatedly [sic] perjured, and did not attempt to disclose or correct any of the false testimony, but instead, he "knowingly" used it.

3

V.  The Defendant was denied his Sixth Amendment right to effective assistance of appellate counsel, and his Fourteenth Amendment right to a full and fair appeal of right, where appellate counsel omitted these significant and obvious issues on direct appeal, that were clearly stronger than the one and only issue counsel did raise.

VI.  Playing Russian roulette with another person shows a wanton and wreckless [sic] disregard for another person's life, but is not an actual intent to kill. Assault with intent to commit murder requires actual intent to kill. Since the evidence showed that Mrs. Walton was shot by Mr. Walton during a game of Russian roulette, there was not sufficient evidence to convict him of assault with intent to commit murder.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court

4

on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016).

When reviewing a claim under AEDPA's deferential standard of review, a federal habeas court must review "the last state court to issue a reasoned opinion

on the issue." *Hoffner v. Bradshaw*, 622 F. 3d 487, 505 (6th Cir. 2010) (quoting *Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005)). Petitioner raised the first five grounds asserted in support of his request for habeas relief for the first time in his post-conviction motion for relief from judgment. The Michigan Court of Appeals and the Michigan Supreme Court denied Petitioner's post-conviction applications for leave to appeal in unexplained one-sentence orders. This Court, therefore, must "look through" these decisions to the trial judge's opinion and determine whether that decision was "contrary to," or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See Hamilton v. Jackson*, 416 F. App'x. 501, 505 (6th Cir. 2011).

### III. Discussion

#### A. Petitioner's Ineffective Assistance of Trial Counsel Claims

Petitioner claims ineffective assistance of trial counsel in his first through third grounds in support of his request for habeas relief.

To establish an ineffective-assistance claim, a habeas petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness" and that he suffered prejudice as a result. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). There is "a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id*. at 689. Habeas review also mandates the application of a second

6

layer of deference: a habeas court analyzes only whether the state court was reasonable in its determination that counsel's performance was adequate. *See Burt v. Titlow*, 571 U.S. 12, 15, 24 (2013); *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014).

Petitioner first asserts that his trial counsel failed to perform an effective cross-examination to impeach the prosecution's witnesses. The state trial court judge found that the exhibits corroborated the witnesses' testimony and that the inconsistencies identified by Petitioner did not exist. (ECF No. 24-10 at Pg ID 818-19.) The trial judge also rejected Petitioner's claim because he never articulated, except in a conclusory fashion, what information would have proven that the witnesses were lying. (*Id.* at Pg ID 820.)

The court rejected for the same reason Petitioner's claim that his trial counsel was ineffective by not calling the officer in charge, Office Glover, to testify and by not investigating two witnesses (unidentified hotel employees) and certain physical evidence (hotel receipts and surveillance video).[1] (*Id.* at 819-20.) As the trial judge wrote, Petitioner failed to identify what information these witnesses would provide or what the physical evidence would show in aid of his defense. (*Id.*)

---

[1] The evidence at trial established that Petitioner, Ms. Walton, and their children left their home after Ms. Walton was shot and spent several nights in hotels.

The trial court understood Petitioner's claims as boiling down to an argument "that his testimony was truthful and all of the other witnesses lied, were coached to lie or were prevented from testifying to cover up the use of perjured testimony." (*Id*. at Pg ID 818.) The court noted that the issue of credibility was central in Petitioner's case. (*Id*.) Yet, regarding credibility, the trial judge wrote: "I find the story that was woven by Mr. Walton (defendant) is probably one of the most improbable, incredible stories that I have ever heard told." (*Id*.) The court found nothing in the record to "refute[] that finding." (*Id*.)

The trial judge's assessment was neither contrary to nor an unreasonable application of clearly established federal law. It also was not based on an unreasonable determination of the facts in light of the evidence presented.

In the state court proceedings and in these federal habeas proceedings, Petitioner has never offered any evidence to show what Officer Glover or the two witnesses would have testified to, if defense counsel had called them as witnesses. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *Workman v. Bell*, 1778 F.3d 759, 771 (6th Cir. 1998). In the absence of evidence as to what their testimony would have been, Petitioner cannot show that he was prejudiced by counsel's failure to call them at trial. *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). Similarly, Petitioner fails to specify how trial counsel should have

8

proceeded to more effectively cross-examine the prosecution's witnesses to establish that they were lying.

In fact, the trial transcript reflects that defense counsel spent more than an hour cross-examining Petitioner's wife, confronting her with various inconsistencies and contradictions in her testimony.[2] (8/26/11 Trial Tr. at 39, 41-84, 90; ECF No. 24-6 at Pg ID 439, 441-84, 490.) Ms. Walton admitted during cross-examination that she had been drinking the day she was shot and told hospital staff that when she left home to buy more alcohol, she saw men fighting, heard a pop, and was hit by a bullet. (*Id.* at 42-43, Pg ID 442-43.) She also acknowledged that Petitioner never said he intended to kill her. (*Id.* at 51, Pg ID 451.) Defense counsel also highlighted the inconsistencies and discrepancies in Ms. Walton's testimony during closing argument. (9/12/11 Trial Tr. at 59-76, ECF No. 24-7 at Pg Id 634-51.)

Further "[c]ourts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997); *Jackson v. Bradshaw*, 681 F.3d 753,

---

[2] The trial transcript reflects that evidence was introduced at 12:15 p.m., shortly before the prosecutor's direct examination of Ms. Walton concluded and defense counsel commenced his cross-examination. (8/26/11 Trial Tr. at 39, ECF No. 24-6 at Pg ID 439.) The prosecution did not engage in a redirect examination of Ms. Walton and following some questions by the trial judge, she was excused as a witness at 2:29 p.m. (*Id.* at 90, Pg ID 490.)

9

765 (6th Cir. 2012) (citng *Henderson*). "'Most cross-examinations can be improved but if that were the standard of constitutional effectiveness, few would be the counsel whose performance pass muster.'" *Jackson*, 681 F.3d at 765 (brackets omitted) (quoting *Henderson*, 118 F.3d at 1287) (additional quotation marks and citation omitted). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002).

For these reasons, the Court concludes that Petitioner is not entitled to habeas relief based on his first, second, or third claims.

### B. Petitioner's Claim Regarding the Prosecutor

Petitioner next claims that the prosecutor knowingly presented perjured testimony from Ms. Walton and two of their children and withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), that would have established that these witnesses testified falsely about "pivotal dates" (those being, when the shooting occurred, when Ms. Walton escaped, and when she reported the incident to the police). The trial court rejected Petitioner's claims, finding no discrepancies where Petitioner specifically claimed discrepancies existed and that he failed to demonstrate that the prosecutor withheld any specific evidence or testimony. (ECF No. 24-10 at Pg ID 819-20.)

10

The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with the rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972) (internal quotation marks and citation omitted). A defendant's due process rights are violated where the prosecutor knowingly solicits false testimony or allows knowingly false testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known was false, a defendant must show: "'(1) that the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.'" *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998) (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)). The statement must be shown to be "indisputably false," not simply "misleading." *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000) (citing *Lochmondy*, 890 F.2d at 823).

Petitioner fails to demonstrate that Ms. Walton's or the children's testimony was "indisputably false." He also does not show that the prosecutor knew or should have known that they testified falsely. Nor does Petitioner present any evidence to substantiate his assertion that the prosecutor "coached" Ms. Walton and the children to testify falsely. At most Petitioner points out inconsistencies in the testimony, but "'mere inconsistencies in testimony by government witnesses do

11

not establish knowing use of false testimony.'" *Coe*, 161 F.3d at 343 (quoting *Lochmondy*, 890 F.2d at 822). Moreover, one of the inconsistencies identified by Petitioner (that is, the date Ms. Walton made her statement to the police), was brought to the attention of the trial judge by defense counsel. The Sixth Circuit has "reject[ed] a due-process claim [based on the introduction of false testimony] where both parties had access to the alleged perjury and 'were in equal positions to clarify the witness's testimony.'" *United States v. Leman*, 574 F. App'x 699, 704-05 (2014) (quoting *Brooks v. Tennessee*, 626 F.3d 876, 896 (6th Cir. 2010)); *see also United States v. Ward*, 190 F.3d 483, 491 (6th Cir. 1999) (rejecting claim that government witness committed perjury where "the court gave the defendants several opportunities to cross-examine and recross-examine the witnesses to bring any inconsistencies in testimony to the attention of the jury"); *see also Norris v. Schotten*, 146 F.3d 314, 334-35 (6th Cir. 1998) (concluding that there is no *Brady* violation where the defense had in its possession evidence demonstrating the witness's inconsistent statements, and remarking that "there would be no need for a jury if trials did not contain such inconsistencies").

Petitioner's assertion that the prosecutor suppressed exculpatory evidence is based on his claim that the prosecutor knowingly introduced false testimony from Ms. Walton and the children. Petitioner does not identify other evidence that he claims is exculpatory and was withheld. Allegations that are merely conclusory or

12

which are merely speculative cannot support a *Brady* claim. *See Burns v. Lafler*, 328 F. Supp. 2d 711, 723 (E.D. Mich. 2004) (citing *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000)). Petitioner's false testimony claim fails for the reasons stated above. Thus his *Brady* claim related to that testimony also fails.

For these reasons, Petitioner is not entitled to relief on his fourth claim.

### C. Petitioner's Ineffective Assistance of Appellate Counsel Claim

In his fifth ground for relief, Petitioner asserts that his appellate counsel was ineffective for failing to raise his first through fourth claims on direct appeal.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). This Court has already determined that Petitioner's first through fourth claims lack merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

Petitioner therefore is not entitled to habeas relief based on his ineffective assistance of appellate counsel claim.

## D. Petitioner's Insufficiency of the Evidence Claim

Finally, Petitioner argues that there was insufficient evidence to establish his intent to kill his wife to support his conviction for assault with intent to commit murder. Although Petitioner denies shooting at his wife and claims she fabricated the entire incident, Petitioner argues that even if her testimony is believed, it establishes at most that they were playing "Russian Roulette." Petitioner argues that this shows, at most, wanton indifference to the likelihood that the victim could be injured or killed, not specific intent to kill. Petitioner raised this claim on direct appeal.

The Michigan Court of Appeals rejected Petition's insufficiency of the evidence claim, reasoning that he "was not playing Russian roulette as it is commonly understood." *Walton*, 2013 WL 2420980, at *2. The court explained:

> Russian roulette is defined as "a lethal game of chance in which a person, using a revolver with one bullet, spins its cylinder, points the muzzle at his or her head, and pulls the trigger." Random House Webster's College Dictionary (2001). Unlike in the typical game of Russian roulette, testimony indicated that defendant loaded his revolver with multiple bullets and paused to check the chamber after pulling the trigger multiple times. Moreover, there is no evidence that defendant spun the cylinder before he pulled the trigger. He knew the position of the bullets, given his statement to Twonder that a bullet was "almost there." Defendant again pulled the trigger until a bullet finally fired and struck Twonder. Given his knowledge of the position of the bullets after he initially attempted to fire his revolver, and the fact that he subsequently pulled the trigger multiple times until a bullet was discharged, it is fair to infer from defendant's actions that he intended to kill Twonder. Viewing the evidence in the light most

> favorable to the prosecution, a rational trier of fact could have concluded that defendant intended to kill Twonder

*Id.* The state court's decision is neither contrary to nor an unreasonable application of Supreme Court precedent. It also is not based on an unreasonable determination of the facts in light of the evidence presented at trial.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is … whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). The court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 318-19 (emphasis in original). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original and citation omitted). The *Jackson* standard applies to jury and bench trials. *See, e.g., U.S. v. Bronzino,* 598 F. 3d 276, 278 (6th Cir. 2010).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas

relief only if the state court's decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under AEDPA." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or reassess the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003); *see also Butzman v. U.S.,* 205 F. 2d 343, 349 (6th Cir. 1953) (in a bench trial, credibility of witnesses is a question for the trial judge).

Under Michigan law, the elements of assault with intent to commit murder are: "'(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder.'" *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (quoting *People v. Plummer*, 581 N.W.2d 753, 759 (Mich. Ct. App. 1998), *appeal denied*, 581 N.W.2d 730 (Mich. 1998)). "[A]n intent to kill for purposes of this offense may not be proven by an intent to inflict great bodily harm or a wanton and willful disregard of the likelihood that the natural tendency of the acts will likely cause death or great bodily harm." *Id.* (citing *People v. Taylor*, 375 N.W.2d 1, 7 (Mich. 1985)). Instead, a conviction for assault with intent to commit murder must be premised upon a defendant's specific intent to kill. *Steele v. Withrow*, 157 F. Supp. 2d 734, 740 (E.D. Mich. 2001) (citing *People v. Edwards*, 431 N.W. 2d 83 (1988)). This "'may be proven by inference from any facts in evidence.'" *Warren*, 161 F.3d at 361 (quoting *People v. Hoffman*, 570 N.W.2d 146, 150 (Mich. Ct. App. 1997), *appeal denied*, 583 N.W.2d 901 (Mich. 1998)). These facts include

> "the nature of the defendant's acts constituting the assault[,] the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made."

*Id.* (quoting *Taylor*, 375 N.W.2d at 8) (additional citations omitted).

The state court's conclusion that the evidence at Petitioner's trial established beyond a reasonable doubt the elements of assault with intent to commit murder

17

was not an objectively unreasonable application of the *Jackson* standard. The evidence presented showed that Petitioner loaded a revolver with multiple bullets, pausing to check the location of the bullets after pulling the trigger multiple times. Petitioner continued to pull the trigger until a bullet discharged and struck Ms. Walton.

The Court therefore rejects Petitioner's sufficiency of the evidence claim as a ground entitling him to habeas relief.

## IV. Conclusion

For the reasons set forth above, the Court concludes that Petitioner is not entitled to habeas relief under § 2254.

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

Reasonable jurists could not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further.

was not an objectively unreasonable application of the *Jackson* standard. The evidence presented showed that Petitioner loaded a revolver with multiple bullets, pausing to check the location of the bullets after pulling the trigger multiple times. Petitioner continued to pull the trigger until a bullet discharged and struck Ms. Walton.

The Court therefore rejects Petitioner's sufficiency of the evidence claim as a ground entitling him to habeas relief.

## IV. Conclusion

For the reasons set forth above, the Court concludes that Petitioner is not entitled to habeas relief under § 2254.

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

Reasonable jurists could not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further.

The Court therefore declines to issue a certificate of appealability. The Court also declines to grant Petitioner leave to appeal in forma pauperis, because any appeal would be frivolous.

Accordingly,

**IT IS ORDERED** that Petitioner's application for the writ of habeas corpus is **DENIED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability and leave to appeal in forma pauperis.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: October 23, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, October 23, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager